UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDEN POWE,

                  Petitioner,           Case No. 2:11-cv-11875
                                            Hon. Denise Page Hood

HUGH WOLFENBARGER,

                  Respondent.
_____/

**OPINION AND ORDER 1) DENYING AMENDED PETITION FOR WRIT
OF HABEAS CORPUS, 2) DENYING CERTIFICATE OF
APPEALABILITY, AND 3) GRANTING PERMISSION TO APPEAL IN
FORMA PAUPERIS**

This matter is before the Court on Petitioner Branden Powe's petition

for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was

convicted in the Wayne Circuit Court after a bench trial of second-degree

murder, MICH. COMP. LAWS. § 750.317, and commission of a felony with a

firearm. MICH. COMP. LAWS. § 750.227b. He was sentenced to 15-to-25 years

for the murder conviction and a consecutive two years for the felony-firearm

conviction. The amended petition raises eight claims: (1) Petitioner was

denied a fair trial by the admission of irrelevant evidence that he smoked

marijuana; (2) the trial court incorrectly scored the sentencing guidelines; (3)

Petitioner's right to confrontation was denied by the admission of evidence

through stipulation; (4) the prosecutor committed misconduct; (5) insufficient evidence was presented at trial to support the first-degree murder charge; (6) newly discovered evidence establishes Petitioner's actual innocence; (7) Petitioner was denied the effective assistance of counsel for failing to present medical evidence that Petitioner was unable to chase the victim; and (8) Petitioner was denied the effective assistance of appellate counsel.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant him permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner's convictions result from the shooting death of twenty-four year old Jermaine Shaffer.

Dontaze Mosley testified at trial that he knew Shaffer from the neighborhood, and that he knew him by his nicknames "B" and "Cripple B." On October 23, 2007, Shaffer asked Mosley to accompany him to his aunt's house to meet Petitioner. Petitioner wanted to buy marijuana from Shaffer.

Shaffer carried a black duffle bag onto the porch, and then an SUVpulled up. Petitioner was seated in the passenger seat. Mosley stood on

2

the porch and saw Petitioner and Shaffer engage in conversation. Mosley saw Petitioner fire a gun at Shaffer. Shaffer then entered the house and stated "B shot me." The duffle bag was gone after the shooting.

Pertrice Woods, Shaffer's cousin, also knew Petitioner. Petitioner would come to her mother's house to drink and smoke marijuana. Woods testified that four days before the shooting, Petitioner and Shaffer were talking about marijuana, and Petitioner said that he would "cop" some.

On the day of the shooting, Woods saw Shaffer on her mother's porch with a large duffle bag. As she was going to her room, she heard gunshots and saw Petitioner reaching out of an SUV window. She then saw the SUV pull away with Petitioner in the passenger seat. Shaffer came into the house holding his chest. Woods shouted that "B" had shot him.

Perrisha Shaffer, another cousin of Shaffer, testified that on the date in question she observed Shaffer and Mosley standing outside. She saw Petitioner talking to Shaffer while sitting in the passenger seat of an SUV. She testified that Mosley subsequently ran inside the house and told everyone to get down because there was shooting. After the police arrived, Perrisha stated that she gave a description of Petitioner as a person who walks with a limp.

3

Julie Perry, a physical therapist, testified that Petitioner is her patient at Beaumont Hospital. She indicated that she helped him with physical therapy following a surgery that makes him walk with a limp.

The parties stipulated that the medical examiner concluded that the victim died from a single gunshot wound to the chest, and that the manner of death was a homicide. The parties also stipulated that the decedent's mother identified him.

Based on this evidence Petitioner was convicted and sentenced as indicated above. Petitioner then filed an appeal of right. His appellate counsel filed an appellate brief raising what now form Petitioner's first and second habeas claims. Petitioner also filed a pro se supplemental brief raising what now form his third, fourth, and fifth habeas claims.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Powe*, No. 286175 (Mich. Ct. App. Nov. 17, 2009). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising all of the claims that were presented to the Michigan Court of Appeals. The application was denied by standard order. *People v. Powe*, No. 140369 (Mich. Sup. Ct. April 27, 2010).

Petitioner then filed the instant action, raising what now are his first five

4

claims. Petitioner later filed a motion to amend the petition and a motion to have the petition held in abeyance while he exhausted new claims. Dkts. 5 and 15. The Court granted the motions. Dkts. 10 and 17.

Petitioner returned to the trial court and filed a motion for relief from judgment asserting that: (1) medical reports from an accident in 2003 left him unable to "chase" the victim, and that trial counsel was ineffective for failing to admit these reports at trial; (2) new evidence in the form of an affidavit from a fellow inmate exculpated Petitioner; (3) the cumulative effect of the errors necessitated reversal of his convictions; and (4) ineffective assistance of appellate counsel for failing to raise the above issues on direct appeal. On April 13, 2013, the trial court denied Petitioner's motion for relief from judgment, citing to both Michigan Court Rule 6.508(D)(3) and to a lack of merit.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals. On November 14, 2013, the Michigan Court of Appeals denied Petitioner's delayed application for "failure to meet his burden of establishing entitlement to relief under Rule 6.508(D)." *People v. Powe*, No. 317320 (Mich. Ct. App. Nov. 14, 2013). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but it was also denied under

5

Rule 6.508(D). *People v. Powe*, 847 N.W.2d 622 (Mich. 2014) (table).

Petitioner then successfully moved to have this case re-opened. The parties filed supplemental pleadings, and the case is now ready for decision.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16

6

(2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision

7

was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012). However, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Analysis

### A. Statute of Limitations and Procedural Default

Respondent asserts that the claims in the amended petition were untimely filed and that review of some of Petitioner's claims are barred by his state court procedural defaults. The Court will nevertheless proceed directly to the merits of Petitioner's claims without consideration of whether they are procedurally defaulted or time-barred because the claims lack substantive merit and a discussion of these affirmative defenses "add nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

### B. Admission of Marijuana Use Evidence

Petitioner first asserts that he was denied a fair trial by admission of testimony from the prosecution witnesses that he smoked marijuana. He argues that whether he was a drug-user was not a relevant issue in the case

and only served to cause unfair prejudice. Respondent asserts that this unpreserved claim of error is noncognizable because it only concerns a matter of state evidentiary law.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

State-court evidentiary rulings may be cognizable on habeas review where such rulings resulted in the violation of a defendant's due process rights. However "[g]enerally state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

Here, as reasonably noted by the Michigan Court of Appeals, the prosecutor's theory of the case was that Petitioner murdered Shaffer because

he wanted to steal the bag of marijuana from the porch. Petitioner's marijuana use was a relevant fact at trial, and the admission of testimony that he was a user did not render Petitioner's trial fundamentally unfair in violation of due process. This claim does not afford a basis for granting habeas relief.

## C. Sentencing Guidelines

Petitioner asserts that the trial court incorrectly scored the sentencing guidelines. Specifically, he claims that the offense variable concerning injury to the victim was incorrectly assessed points because in every murder case the victim has died, and so no points should be scored. Respondent asserts that the claim is noncognizable.

Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. See *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v.*

10

*Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447. A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner fails even to argue that the facts found by the court at sentencing were either materially false or based on false information. *Id*. Instead, Petitioner states only that the scoring of an offense variable was wrong. Even accepting Petitioner's position as true, his minimum sentence still fell within the sentencing guidelines range. Such a claim clearly falls far short of the sort of egregious circumstances implicating due process. Moreover, the Michigan Court of Appeals concluded that Petitioner's position with regard to the calculation of variable lacked merit because the Michigan Supreme Court had held that points should be scored for injury to the victim in a murder case.

The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the

11

challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). The state court's rejection of Petitioner's claim was not contrary to nor an unreasonable application of established Supreme Court precedent.

### D. Admission of Stipulated Evidence

Petitioner's third claim asserts that his Sixth Amendment right to confront witnesses was violated by the admission of evidence by stipulation of the parties. At issue are the admission of reports related to the cause of death of the victim and the lighting conditions. Petitioner notes that the parties stipulated to reports that showed (1) that when the police arrived at the scene Shaffer was unresponsive in the front doorway of the house and there was blood in the area, (2) that the medical examiner found that Shaffer died as the result of a single gunshot wound to the chest, and (3) that police noted a nearby streetlight was in working order on the date of the shooting.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The admission of "testimonial" hearsay statements — that is, out of court statements that are the functional

12

equivalent of in-court testimony — violates a defendant's Sixth Amendment rights unless the declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine the witness. See *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

The Supreme Court addressed the admissibility of reports prepared as part of a criminal investigation in the absence of the author's in-court testimony in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308-09 (2009). The Supreme Court concluded that lab reports were "functionally identical to live, in-court testimony" by the analysts regarding the results of their tests — and the defendant was therefore entitled to confront the analysts at trial. *Id*. at 310-11.

There was therefore a basis for Petitioner's trial counsel to demand the admission of the reports through live testimony. Petitioner's trial counsel, however, waived any such objection by stipulating to admission of the evidence, and the right to confrontation may be waived. *Melendez-Diaz*, 557 U.S. at 314 n.3 (2009). Under these circumstances, having stipulated to the admission of the evidence, Petitioner's challenge must be one for ineffective assistance of counsel.

Petitioner argued in the alternative in state court that his trial counsel

was ineffective for agreeing to the stipulations instead of forcing the prosecutor to present live witnesses. This argument fails. Trial counsel's decision to stipulate to the admission of the reports did not prejudice Petitioner because the same evidence would have been introduced eventually through a more lengthy process without stipulations from counsel. See *Burke v. United States*, 261 F. Supp. 2d 854, 862 (E.D. Mich. 2003). Petitioner offers no basis on which his counsel would have challenged the contents of the reports through cross-examination of the authors. This claim is therefore without merit.

**E. Prosecutorial Misconduct**

Petitioner's next claim asserts that the prosecutor committed misconduct. He argues that the prosecutor vouched for the credibility of Mosley by improperly introducing his prior consistent statements given at the preliminary examination. Petitioner also asserts that the prosecutor improperly argued that the murder was part of a drug deal gone wrong, that a revolver was the murder weapon, and that a single gunshot wound caused the victim's death.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing

14

*Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155, 183 L. Ed. 2d 32 (2012)(quoting *Harrington*, 562 U.S. at 103).

The Michigan Court of Appeals reasonably rejected Petitioner's claims of prosecutorial misconduct. First, it is true that the admission of Mosley's prior consistent testimony at the preliminary examination was likely premature, as Petitioner had not yet challenged his credibility when the prior testimony was presented as required by Michigan Rule of Evidence 801(d)(1)(B).

15

Nevertheless, improper vouching involves comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony. See *United States v. Francis*, 170 F. 3d 546, 550 (6th Cir. 1999).  While as a state-law evidentiary issue, the prior testimony may have been prematurely admitting and had the impact of bolstering Mosley's credibility, it did not result in the sort of prejudice–indicating a personal belief by the prosecutor based on secret knowledge–to support a due process claim.

With respect to the prosecutor's closing arguments, evidence was presented at trial that Petitioner went to meet Shaffer for the purpose of buying marijuana, and that Shaffer's bag of marijuana was missing after the shooting. Evidence was presented that there were no shell casings found at the scene and that the victim suffered a single gunshot wound. It is improper for a prosecutor during closing arguments to present information that has not been introduced into evidence and that is prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id*. In the present case, there was an evidentiary basis for the prosecutor's challenged arguments, and therefore his comments were not misconduct. This claim therefore does not

16

present a basis for granting habeas relief.

## F. Sufficiency of the Evidence

Petitioner next argues that insufficient evidence was presented at trial to allow the trial judge, sitting as trier of fact, to consider the charge of first-degree murder. Specifically, Petitioner asserts that there was insufficient evidence of premeditation and deliberation.

As an initial matter, it is not clear that the Court must address the claim at all because Petitioner was acquitted of first-degree murder. "Some courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." *Daniels v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996) (citing *Howard v. United States*, 389 F.2d 287, 292, 128 U.S. App. D.C. 336 (D.C. Cir. 1967); *United States v. Alexander*, 471 F.2d 923, 966, 152 U.S. App. D.C. 371 (D.C. Cir. 1972); and *United States v. Dent*, 477 F.2d 447, 155 U.S. App. D.C. 278 (D.C. Cir. 1973)). In light of these cases, it is difficult to describe the rejection of Petitioner's claim by the state court as constituting an unreasonable adjudication of clearly established law. If clearly established law required reversal when unsupported charges are allowed to be submitted to the finder of fact, then the rational of these cases would be inapposite.

17

To the extent Petitioner has raised a cognizable claim, the issue is whether "there was sufficient evidence from which to conclude that petitioner was guilty of first degree murder . . . ." *Daniels*, 83 F.3d at 765. If there was, his argument fails. *Id*. "To establish first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated." *People v. Haywood*, 209 Mich. App. 217 (1995). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look at his actions. This time interval may be minimal." *People v. Gonzalez*, 178 Mich. App. 526 (1989) (internal citation omitted). Premeditation and deliberation may be inferred from all the facts and circumstances, including the parties' prior relationship, the defendant's actions before and after the killing, and the killing itself. *Haywood*, 209 Mich. App. at 231. The element of premeditation may also be inferred from the type of weapon used, the location of the wound inflicted, and the defendant's own statement. *People v. Berry*, 198 Mich. App. 123 (1993).

Here, a rational trier of fact could have concluded from Petitioner's conduct and the other circumstances of the crime that Petitioner intended to shoot Shaffer and that he had enough time to take a second look at his actions and premeditate the shooting. Evidence was offered at trial indicating

18

that Petitioner set up the meeting with Shaffer, and therefore a reasonable inference could be made that the robbery-murder was planned beforehand. Furthermore, there was evidence of two shots being fired. Viewed most favorably to the prosecution, this would allow for an inference that Petitioner's first shot missed the victim, giving him an opportunity to take a "second look" before he decided to shoot at the victim a second time, killing him. The trial court did not violate Petitioner's right to due process when it denied Petitioner's motion for a directed verdict of acquittal on the first-degree murder count.  Because the Michigan Court of Appeals reasonably concluded that there was sufficient evidence of premeditation, Petitioner has no right to relief on the basis of his challenge to the denial of his motion for a directed verdict of acquittal.

## G. Newly Discovered Evidence

Petitioner's next claim asserts that he has newly discovered evidence proving his innocence. He has proffered the Court evidence in the form of multiple medical reports indicating that he was unable to run on the date of the crime, and an affidavit from a fellow prisoner, Willie Marshall, claiming that he saw the shooting and Petitioner was not the shooter.

An actual innocence claim does not constitute a constitutional claim in

19

itself. See *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993), cited in *Schlup v. Delo*, 513 U.S. 298, 314 (1995). The Sixth Circuit has interpreted *Herrera v. Collins* to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases. See *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005). The function of a federal court reviewing a habeas corpus petition is to ensure that the petitioner is not imprisoned in violation of the constitution, not to correct errors of fact. *Herrera*, 506 U.S. at 400; *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *Sitto v. Lafler*, 279 F. App'x 381, 381-82 (6th Cir. 2008) (affirming denial of habeas relief on similar claim).

Even if Petitioner's actual innocence claim were cognizable, the claim is without merit. "[A] petitioner does not meet the threshold requirement [for proving his actual innocence] unless he persuades the district court that, in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. To satisfy the standard, a petitioner must present "'new reliable evidence.'" *House v. Bell*,

20

547 U.S. 518, 537 (2006). Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id*. at 538 (citation omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id*.

Even if Petitioner's claim presented a cognizable basis for relief, the Court would reject it. The evidence presented at trial did not indicate that there was any sort of foot-chase before the victim was shot. The witnesses saw Petitioner seated in the passenger seat of an SUV talking with Shaffer immediately before the shooting. There was testimony that the *victim* took off running before the shooting, but there was no testimony that Petitioner chased him. Rather, the closest thing Petitioner can point to is Mosley's preliminary examination testimony that Petitioner "hopped" out of the SUV before firing. The Michigan Court of Appeals did note the possibility that Petitioner missed with his first shot and then struck the victim with a second shot, but even under this scenario there was no evidence of a pursuit on foot. The evidence presented at trial and the theory of guilt offered by the prosecutor is perfectly consistent with the proffered evidence that Petitioner

was physically unable to chase the victim on foot.

Marshall's affidavit is no more compelling. Marshall is a fellow prisoner serving his own sentence. Long-delayed statements such as his are viewed with extreme suspicion. See *Milton v. Secretary, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (affidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence); see also *Herrera*, 506 U.S. at 423 ("It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him."). Like the state trial court, this Court is not persuaded that Petitioner's proffered new evidence demonstrates his actual innocence or that it merits relief.

## H. Ineffective Assistance of Trial Counsel

Petitioner next argues that he was denied the was denied the effective assistance of counsel for his trial attorney's failure to investigate and present medical evidence that Petitioner was unable to chase down the victim on foot before shooting him.

Counsel is ineffective when his performance falls below an objective standard of reasonableness and thereby prejudices his client. See *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). To satisfy the

22

performance element, a defendant must point to some action "outside the wide range of professionally competent assistance." *Id*. at 690. To satisfy the prejudice element, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In habeas, a reviewing federal court must apply a doubly deferential standard of review: "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

For the reasons stated above, Petitioner's counsel was not ineffective for failing to present evidence regarding Petitioner's medical condition at trial. The prosecutor's witnesses did not testify that Petitioner chased the victim before shooting him. Accordingly, the failure to introduce medical evidence did not result in *Strickland* prejudice. Furthermore there was a witness presented at trial who testified that Petitioner had undergone surgery and walked with a limp. There is no reasonable probability that the result of Petitioner's trial would have been more favorable had counsel presented the proffered evidence at trial. This claim does not provide a basis for granting habeas

relief.

## I. Ineffective Assistance of Appellate Counsel

Petitioner asserts that he was denied the effective assistance of appellate counsel for his appellate counsel's failure to raise his ineffective assistance of trial counsel claim on direct appeal. As discussed, Petitioner's claim of ineffective assistance of trial counsel is without merit.  It is not ineffective assistance for appellate counsel to decide not to raise meritless claims. See *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). Petitioner was not denied the effective assistance of appellate counsel because the claims he alleges counsel should have raised—or assisted Petitioner to better raise on his own—are all without merit.

## J. Evidentiary Hearing

Petitioner seeks an evidentiary hearing on his claims of actual innocence and ineffective assistance of counsel. No hearing is necessary because even assuming Petitioner presented the proffered evidence at a hearing his claims do not merit relief for the reasons stated above. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995) (evidentiary hearing is unnecessary

and not required in cases "where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted").

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.

The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's

25

assessment of his claims. The Court will, however, grant Petitioner permission to appeal *in forma pauperis*, because an appeal would not be frivolous.

## V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal *in forma pauperis* is **GRANTED**.


s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  April 29, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2016, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

26